*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

THOMAS GRAHAM,

        Plaintiff-Appellant,

v

OSHTEMO CHARTER TOWNSHIP CLERK and
OSHTEMO CHARTER TOWNSHIP,

        Defendants-Appellees.

UNPUBLISHED
November 10, 2022

No. 361996
Kalamazoo Circuit Court
LC No. 2021-000510-AW

Before: SAWYER, P.J., and MARKEY and SWARTZLE, JJ.

PER CURIAM.

Plaintiff appeals by right the trial court's order granting summary disposition in favor of defendants and rejecting plaintiff's request for a writ of mandamus. We affirm.

In August 2021, the Oshtemo Charter Township Board of Trustees voted to issue bonds not to exceed $30 million to fund a sanitary sewer expansion. A petition for a referendum on whether defendant, Oshtemo Charter Township, should issue bonds for the project garnered 2,423 signatures on 284 petition sheets. The petitions were reviewed by defendant, Oshtemo Charter Township Clerk (the township clerk). The township clerk found that 79 individual signatures were invalid, a decision that plaintiff did and does not dispute. The township clerk also determined that 117 full petition sheets were invalid because of errors regarding the notarization of those sheets. The petition sheets were invalidated for the following reasons involving three different notaries public: (1) a notary public signed petition sheets on the wrong line; (2) notaries failed to provide a signature on petition sheets, and (3) one petition sheet was not notarized at all, which invalidation was not challenged. Because of the notarization defects, the petition did not have the requisite number of signatures to be placed on the ballot for purposes of a referendum.

To give context to our discussion of the litigation that ensued, we begin with the relevant statutory provision. MCL 141.2517 addresses the issuance of securities by a municipality for the payment of capital improvements. MCL 141.2517(2) sets forth the rules applicable to a referendum, providing, in relevant part, as follows:

If, within 45 days after the publication of the notice of intent [to issue securities], a petition, signed by not less than 10% or 15,000 of the registered electors, whichever is less, residing within the county, city, village, or township, is filed with the governing body of the county, city, village, or township, requesting a referendum upon the question of the issuance of the municipal securities, then the municipality shall not issue the municipal securities until authorized by the vote of a majority of the electors of the county, city, village, or township qualified to vote and voting on the question at a general or special election. A special election called for this purpose shall not be included in a statutory or charter limitation as to the number of special elections to be called within a period of time. *Signatures on the petition shall be verified by a person under oath as the actual signatures of the persons whose names are signed to the petition*, and the governing body of the county, city, village, or township shall have the same power to reject signatures and petitions as city clerks under section 25 of the home rule city act, 1909 PA 279, MCL 117.25. . . . . [Emphasis added.]

Plaintiff filed a complaint seeking a writ of mandamus. Plaintiff requested that the trial court enter an order of mandamus directing the township clerk to validate the petition sheets that she had rejected and place the referendum on the ballot for vote by the township electorate. The thrust of plaintiff's position was contained in the following allegation of his complaint:

Plaintiff asserts that it was an error for [the clerk] to invalidate the notarial acts of [the three notaries] . . . because the errors of the notary are not fatal to the validity of the affidavit so long as it appears either from the rest of the instrument or from "evidence aliunde" that the affidavit was in fact duly sworn to before an authorized officer. This rule is based upon the principle that a party should not suffer because of the inadvertent omission of the officer to perform his duty. [Quotation marks and citations omitted.]

Defendants took the position that all the petition sheets should have been invalidated because none of the notaries administered an oath or affirmation to the petition circulators as required by MCL 141.2517(2). Defendants also claimed that one notary public had a pecuniary interest that prohibited her from acting as a notary.

Defendants moved for summary disposition pursuant to MCR 2.116(C)(10), and plaintiff moved for a writ of mandamus. The parties presented various arguments in support of their positions. Following a hearing on the motions, the trial court denied plaintiff's request for a writ of mandamus and granted defendants' motion for summary disposition. At the hearing, the arguments focused on the extent of the review that the township clerk was permitted or required to engage in when examining petitions. The trial court concluded that the township clerk's actions fit within the authorization of the statute and her gatekeeper role and that the township clerk did not "overstep[] her bounds with regards to simply analyzing the validity of [the] signatures and overall petitions." The court determined that the township clerk had taken "measured steps in exercising her responsibilities under the statute." An order in accord with the trial court's ruling from the bench was entered. Plaintiff now appeals.

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). A trial court's decision regarding whether to grant a writ of mandamus is reviewed for an abuse of discretion. *Berry v Garrett*, 316 Mich App 37, 41; 890 NW2d 882 (2016). But we review de novo "whether defendants have a clear legal duty to perform and whether plaintiff has a clear legal right to performance of any such duty." *Id*.

On appeal, plaintiff, now acting *in propria persona*, presents multiple arguments that are somewhat difficult to understand. He first contends that "strict compliance . . . of the verification requirement found in MCL 141.2517(2) creates a duty for petition circulators to swear to the genuineness of each signature on the petition under oath[, and] [t]his is an impossible requirement to truthfully comply with while keeping the requirement constitutional." Plaintiff appears to argue that the language in MCL 141.2517(2) is impossible to satisfy because the statute requires circulator verification under oath based on personal knowledge of *facts*, as opposed to the circulator swearing to his or her *beliefs*. Later, plaintiff asserts that "[d]ue to the absence of the word 'purported' in MCL 141.2517(2) the affiant must have personal knowledge that the person who signed the petition was in fact who they purported to be and signed their genuine signature." Plaintiff then claims:

> If the circulator of a referendum petition swears under oath that, of his own knowledge, the signatures on the petition which he has circulated are the signatures of the persons whose names are signed to the petition when, in fact, he has no such knowledge, the falsity of his affidavit gives rise, at least, to a presumption of fraud. Without personal knowledge gained through examination of a photo identification or the list of registered voters, there is no truthful way to make the affidavit the statute requires.

Plaintiff next shifts to and presents a constitutional vagueness argument. He argues that MCL 141.2517(2) "cannot be construed as requiring the circulator, while collecting signatures for the petition, to ask the elector for the elector's state issued photo ID." Plaintiff posits that this would dissuade electors from signing the petition. He also states that "[t]he duties being required go outside of the bounds of policing the circulator, and unduly burdens the circulator's core right of political speech by introducing an elector policing duty while the circulator is acting at the elector's advocate." Plaintiff argues that because such an approach, i.e., asking a person for a photo identification when obtaining a signature, would be unconstitutional, the Legislature must have intended for the circulators to gain the knowledge required by the statute *after* the signatures were collected. But, according to plaintiff, the two options in doing so—proving identity by checking names and addresses against election records gathered through the Freedom of Information Act or scheduling an appointment with a municipal clerk or the Secretary of State to inspect election records to determine the genuineness of actual signatures—"are either unconstitutional or impossible to comply with."

Defendants argue that MCL 141.2517(2) "does not purport to require the circulator to verify [a] 'person's' identification, or attest to the 'genuineness' of the signature, but merely that the person whose name appears on the petition actually signed his or her name. Nothing more." Defendants additionally contend that plaintiff does not address the reasons the trial court gave for its ruling.

We find it unnecessary to address the substance of plaintiff's confusing arguments because they are irrelevant. The arguments are entirely unrelated to the reasons the township clerk cited for rejecting petition sheets. The township clerk did not reject any signatures because a circulator had obtained a signature without asking for identification or verifying it by the methods suggested by plaintiff. Moreover, plaintiff does not point to any claim by a circulator who felt obligated to take the steps plaintiff believes are required by MCL 141.2517(2). Moreover, plaintiff's arguments have no connection whatsoever to the reasoning the trial court articulated in support of its ruling. "When an appellant fails to dispute the basis of a lower court's ruling, we need not even consider granting the relief being sought by the appellant." *Denhof v Challa*, 311 Mich App 499, 521; 876 NW2d 266 (2015). Additionally, "we will not reach constitutional issues that are not necessary to resolve a case." *Booth Newspapers, Inc v Univ of Mich Bd of Regents*, 444 Mich 211, 234; 507 NW2d 422 (1993). In sum, we conclude that reversal is unwarranted.

We affirm.


/s/ David H. Sawyer
/s/ Jane E. Markey
/s/ Brock A. Swartzle